COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-458-CR

 

 

RITCHIE ELBERT HERNANDEZ A/K/A                                      APPELLANT

RITCHIE
E. HERNANDEZ

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

MEMORANDUM
OPINION[1]

 

------------

I.  Introduction

Appellant Ritchie Elbert
Hernandez a/k/a Ritchie E. Hernandez appeals his conviction and
thirty-five-year sentence for murder.  In
two issues, appellant complains that the evidence is legally and factually
insufficient to support the jury=s verdict.  We affirm.








 

II.  Background Facts

On March 7, 2004, Lisa Jones
and her brother were driving in the Westpoint area of Fort Worth when Jones saw
a man covered in blood lying face-down in a ditch.  Jones saw another man, later identified as
appellant, sitting behind the wheel of a car on the side of the road near the
ditch.  Jones pulled over to the nearest
stop sign and called 9-1-1. 

While Jones waited for the police to arrive, she saw appellant get out
of the car, walk over to the man in the ditch, try to lift him, fail, and lay
the man back on the ground.  Appellant,
who appeared to be in shock, next walked back to his car, leaned on its bumper,
rocked back and forth, and attempted to use his cell phone.

Later, Latasha Morgan, a nurse=s aide, also drove by.  Morgan
saw appellant kneeling on the ground near a body and crying hysterically.  Morgan got a towel from her car to use as a
pressure bandage, brought the towel to appellant, and told appellant to apply
pressure.  Appellant did not comply, and
told Morgan that A[t]hose
niggers did it.@








When the paramedics arrived, they noticed that the victim, who was
later identified as Charles Perry, had several deadly chest wounds.  Although the paramedics took Perry to the
hospital, Perry was dead before he left the scene.  

Before Perry was transported,
however, Officer Shawn Elliott from the White Settlement Police Department
stopped at the scene and saw appellant lying over Perry in the ditch.  Both appellant and Perry were covered in
blood.  Officer Elliott asked appellant
what happened, and appellant said that he had picked up Perry from a motel on
Highway 80.  According to appellant,
Perry was already injured when he picked him up.  When Officer Elliott asked why appellant did
not transport Perry to a hospital, appellant said that Perry did not want to go
because he had some illegal narcotics on him. 
Officer Elliott next asked appellant for more details about where the assault
had taken place, and this time appellant stated that he had picked up Perry at
Rosedale and I-35, which is not near Highway 80. 

An autopsy revealed that Perry died of multiple stab wounds and blunt
force trauma to the head.  Three days
after Perry died, the officers obtained consent to search a fenced-off area
near where Perry=s body was
found; during this search, they found a butterfly knife with Perry=s blood on it lying several feet from the nearby fence line.  The knife contained the blood of at least one
other person. 

Appellant was charged with and convicted of murder and sentenced to
thirty-five years=
incarceration.  This appeal followed.








III.  Sufficiency of the Evidence

Appellant contends that the
evidence is legally and factually insufficient to support the jury=s verdict that he was the person who murdered Perry.   

A.  Standards of Review

1.  Legal Sufficiency

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

2.  Factual Sufficiency








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d 417.

B.  Analysis 

A person commits murder if he
intentionally causes the death of another by inflicting serious bodily injury
and committing an act clearly dangerous to human life.  See Tex.
Penal Code Ann. ' 19.02(b)
(Vernon 2003).  Appellant contends that
Perry was actually stabbed in a fight with Aother individuals at another location@ and that Perry refused appellant=s offer to take him to the hospital because he feared he would be
arrested on drug charges.  According to
appellant, he was simply trying to help Perry, and the State failed to produce
sufficient evidence to establish that he was the murderer.  We disagree. 









At trial, Jones testified that she saw a man lying face down in a
ditch.  When Jones stopped and called
9-1-1, she saw appellant sitting in an idling car near the body; the car=s driver=s side door
was shut and the passenger side door was open. 
Jones saw appellant get out of the car, walk over to Perry, try to lift
Perry by the arms, fail, place Perry back on the ground, and then return to the
rear of the car.  Next, appellant sat on
the car=s bumper, rocked back and forth, and appeared to make a phone
call.  No evidence was ever produced
regarding who appellant was attempting to call. 
According to Jones, appellant was shocked as if he Awasn=t sure what
to do next.@  Jones did not report seeing anyone in the
area around Perry=s body
except appellant. 

Several witnesses testified that they saw appellant kneeling over
Perry, who was lying on the ground. 
Officer Elliott testified that Perry was covered in blood and that
appellant=s hands and
chest were covered in blood.  The
interior of the car was also coated with blood. 
The crime scene officer testified that he believed the murder had
occurred inside the car.  On the other
hand, Dr. Gary Sisler, the doctor who performed Perry=s autopsy, testified that the positions and angles of the stab wounds
suggested that Perry was in an upright or standing position when he was
stabbed.  Dr. Sisler acknowledged that he
had not seen the car, however, where blood was slung from the dashboard to the
hatchback and across both the passenger=s and driver=s
doors.  Dr. Sisler also testified that
the positions and angles of the wounds reflected the relative position of the
body in relation to the knife; either the knife was changing position relative
to the body, or the body was changing position relative to the knife.  The medical examiners opined that Perry=s wounds were inflicted thirty to forty minutes before the paramedics
arrived and possibly up to one hour before he ultimately died. 








Appellant made several
inconsistent statements about where he picked up Perry and about Perry=s wounds.  He told Morgan, the
nurse=s aide, that A[t]hose
niggers did it@ and mentioned
a Motel 6 Aacross town.@  At first, appellant told
Officer Elliott that he picked up Perry at a motel on Highway 80 and that Perry
had already been stabbed.  When Officer Elliott
pressed him for more details, however, appellant said that he actually picked
up Perry at ARosedale and
35,@ which is not near Highway 80. 

According to appellant, Perry
was already injured when he picked him up, and refused medical treatment
because he feared being arrested on drug charges or because he had some illegal
narcotics Aon him.@  Perry was combative with the
paramedics when they first tried to load him onto the stretcher, and his
injuries were serious; he had two collapsed lungs, blinding stab wounds to both
eyes, fractures to his nose, and his upper lip had been torn away.  The medical examiner did not find any
narcotics Aon Perry;@ however, the examiner determined that Perry was under the influence
of marijuana, cocaine, and methamphetamine when he died.








An autopsy revealed that Perry died of multiple stab wounds and blunt
force trauma to the head.  During a
search of a fenced-off area near the scene, officers found a butterfly knife
with traces of Perry=s blood
lying several feet from the fence line and approximately eighteen feet from the
car that appellant was sitting in when Jones drove up.  Dr. Sisler testified that the knife was
capable of causing both the stab wounds to Perry=s chest and the blunt trauma wounds to his head.  Moreover, the amount, location, and type of
blood splatters in appellant=s car show that the assault likely took place in his car.

The testimony admitted at trial does not support appellant=s argument that the evidence was insufficient to establish his
guilt.  For example, witnesses saw
appellant only sit in a car, pace at the rear of the car, kneel on the ground,
attempt to lift Perry=s body one
time without success, and lie across Perry=s body.  None of this involves
strenuous physical activity.  However,
Officer Elliott testified that appellant appeared to be Aphysically worn out.@  Further, appellant claimed that
Perry told him not to take him to a hospital despite the fact that Perry was
bleeding profusely, had two collapsed lungs, had puncture wounds to both eyes,
had a broken nose, and his upper lip had been torn away.  Appellant does not explain how Perry was
physically or mentally capable of giving him oral instructions against taking
him to the hospital or how Perry was able to get out of the car and walk into a
ditch.  








Further, none of appellant=s hypotheses are reasonable.  In
his scenario, appellant found Perry somewhere in Tarrant County bleeding
profusely, blind, and probably unable to speak from the broken nose and torn
upper lip.  Instead of taking Perry to
the hospital or calling for help, appellant drove Perry to a remote area in
West Fort Worth.  Somehow, Perry managed
to sling blood in appellant=s car from the rear hatch to the dashboard before getting out of the
car, walking to a ditch, and lying face down.  While this was happening, appellant sat behind
the wheel of the car with the motor idling. 
Significantly, the probable murder weapon bearing Perry=s blood and DNA appeared several feet from the ditch where Perry was found.  

The jury was free to consider the State=s theory of how this crime occurred and compare it with appellant=s claim that he was merely Aattempting to help Mr. Perry in the minutes leading up to his death,
but because [sic] the large amount of blood loss, was unable to save him.@

After reviewing the evidence in a light most favorable to the verdict,
we conclude that any rational juror could have found the essential elements of
murder beyond a reasonable doubt.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Hampton, 165 S.W.3d
at 693.  Further, the evidence supporting
the conviction is not so weak, nor the contrary evidence so overwhelming, that
the jury=s verdict is clearly wrong or manifestly unjust.  Watson, 204 S.W.3d at 414-15,
417.  Therefore, we hold that the
evidence is both legally and factually sufficient to support the jury=s finding.  Accordingly, we
overrule appellant=s two
issues. 

 








IV.  Conclusion

 

Having overruled appellant=s two issues, we affirm the trial court=s judgment.  

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL
B:   LIVINGSTON, WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:
May 31, 2007











[1]See Tex. R. App. P. 47.4.